UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA DUTKO, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : 3:06cv1270 (MRK) |
| | : |
| MARK LOFTHOUSE and | : |
| CITY OF MILFORD PLANNING AND | : |
| ZONING BOARD, | : |
| | : |
| Defendants. | : |

## RULING AND ORDER

Currently before the Court is Defendants' Motion for Summary Judgment [doc. # 37]. In her Complaint, Plaintiff Donna Dutko alleges that Defendants violated her constitutional rights when they excluded her property ("75 High") from the Milford Center Design Development ("MCDD") zone, a mixed-use zoned area adopted by the City of Milford on December 2, 2003. *See* Complaint [doc. # 1]. Ms. Dutko's property, which she purchased in 1994, was at the time of her purchase and is to this day zoned R-7.5, a residential zoned area.

## I.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials . . . ." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II.

Ms. Dutko initially sued both the City of Milford Planning and Zoning Board (the "Board") and one of its members, Mark Lofthouse. However, in briefing, *see* Memorandum in Opposition [doc. # 40], at 3 n.2, and at oral argument on April 10, 2008, Ms. Dutko's counsel conceded that Mr. Lofthouse is entitled to legislative immunity for the claims asserted in this action and that judgment should enter for Mr. Lofthouse. Accordingly, the Court grants summary judgment for Mr. Lofthouse.

Additionally, at oral argument, counsel for Ms. Dutko withdrew Count Three of her

2

Complaint, which asserted an equal protection selective prosecution claim, and Count Four, which alleged an equal protection class-of-one claim based on the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Therefore, the Court grants summary judgment to the Board on Counts Three and Four. That leaves two remaining counts – Count One, which alleges a substantive due process claim,[1] and Count Two, which asserts a gender-based equal protection claim.

Ms. Dutko's substantive due process claim, Count One, is resolved relatively easily. To prevail on this claim, she must show that: (1) she has a valid property interest in the MCDD zoning; and (2) that the Board infringed that property right in an arbitrary or irrational manner. *See Cine SK8, Inc. v. Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007). Ms. Dutko cannot meet the first requirement for her cause of action because she cannot show that she has a valid property interest. "The Second Circuit uses a strict entitlement test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment." *Id.* (quotation marks omitted). "Because the U.S. Constitution generally does not create property interests, . . . in applying the entitlement test, [courts must look] to existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine." *Id.* (quotation marks omitted).

Ms. Dutko's substantive due process claim arises because her property was included in the MCDD zone in several of the proposed maps comprising part of a comprehensive Plan of Conservation and Development ("PCD") prepared as part of the re-zoning process; but was excluded from the MCDD zone in the final amended zoning regulations and zoning maps. As a result of the

---

[1] In briefing and at oral argument, counsel for Ms. Dutko sought to advance a procedural due process claim under Count One, but later conceded, in a Supplemental Brief [doc. # 48] filed on April 28, 2008, that such a claim was not properly before the Court. The Court agrees.

3

proposed PCD maps, Ms. Dutko claims that she acquired a property interest in having her property zoned MCDD and that the "removal" of her property from the MCDD zone in the final zoning regulations and map adopted on December 2, 2003 was a violation of her substantive due process rights.

The Court has no doubt – and at oral argument, counsel for Ms. Dutko virtually conceded – that the inclusion of Ms. Dutko's property in the proposed maps did not give Ms. Dutko any entitlement or property interest in having her property zoned MCDD. *See Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 78 (D. Conn. 2004) ("As a general rule, 'entitlement turns on whether the issuing authority lacks discretion to deny the permit . . . .'" (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). As a preliminary matter, the Court notes that each of the proposed PCD maps on which Ms. Dutko relies bore a legend indicating that they were not final and their advisory nature was reiterated during at least one of the public hearings conducted about the re-zoning plan. S*ee* Mot. for Summ. J. [doc. # 37], Ex. 3 ("March 20, 2003, Public Hearing Minutes") at 33-34. In any event, under state law, the Board had complete discretion either to accept or reject the proposed maps as well as Ms. Dutko's requests that her property be included in the MCDD zone. *See* Conn. Gen. Stat. § 8-23(a)(g)(1) ("After completion of the public hearing, the commission may revise the plan and may adopt the plan or any part therof or amendment thereto by a single resolutions or may, by successive resolution, adopt parts of the plan and amendments thereto."); *Harris v. Zoning Comm'n of New Milford*, 259 Conn. 402, 415-16 (2002); *Stiles v. Town Council of West Hartford*, 159 Conn. 212, 218-19 (1970). Furthermore, Connecticut law is clear that master plans such as the PCD are "merely advisory" and are not binding on a zoning commission in its later adoption of specific zoning regulations. *See, e.g.*, *AvalonBay Cmtys., Inc. v. Town of*

*Orange*, 256 Conn. 557, 573-75 (2001) ("This court repeatedly has recognized that a town plan is merely advisory." (quotation mark omitted)); *Dooley v. Town Plan & Zoning Comm'n of Fairfield*, 154 Conn. 470, 473 (1967) ("The master plan, in its designation of appropriate uses for various areas in a town, is merely advisory."). Thus, under state law, inclusion of Ms. Dutko's property in some of the proposed PCD maps did not give Ms. Dutko any entitlement to have her property zoned MCDD. Because Ms. Dutko lacks the threshold requirement for a substantive due process claim – a protectible property interest – the Board is entitled to summary judgment on Count One.

Turning to Ms. Dutko's final claim, a gender-based equal protection claim, Ms. Dutko must show that she suffered purposeful or intentional discrimination by the Board on the basis of her gender. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118 (2d Cir. 2004); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) ("We have made clear that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." (quotation marks and alterations omitted)). A plaintiff alleging a violation of her equal protection rights may present evidence of the treatment of others of a different gender "as a basis for the trier of fact to infer that the differing treatment meted out to the plaintiff was based on [gender]." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005). Where such evidence is presented, a court seeks to determine "whether the similarity between the circumstances of the plaintiff and those of the comparators tends to prove[] that [gender] was a factor in the differing treatment."[2] *Id.* That said, the Court's task at this stage is not to decide any contested

---

[2] The standards for an equal protection claim based on membership in a protected class are different from those for "class-of-one" claims. In class-of-one cases, "the treatment of persons in similar circumstances is not offered to provide, along with other evidence, an evidentiary inference of the use of particular impermissible factors. In such a 'class of one' case, the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to

factual issues, but rather to determine whether there are genuine issues of fact to be tried.

At oral argument, counsel for Ms. Dutko acknowledged that she has no evidence of any gender-based comments by Board members.[3] However, he asserted that the following two considerations, standing alone, would permit a reasonable jury to infer gender-based discrimination by the Board. First, Ms. Dutko's property was not included in the MCDD zone, while three other properties – Armory Walk, Shipyard Point and 35 Prospect Street – which she says are all owned by men, were. Second, she asserts that there is no rational reason why those three properties were included in the MCDD zone and Ms. Dutko's was not. Therefore, a reasonable jury could find that Ms. Dutko's property was not included because of her gender.

The Court assumes (though without deciding) that the three properties Ms. Dutko offers are proper comparators. However, it is apparent that there were many perfectly legitimate reasons why these properties, and not Ms. Dutko's, were included in the MCDD zone. First, it is undisputed that unlike Ms. Dutko's property – which has always been in a residential zone – the Armory Walk and Shipyard Lane properties were both previously zoned commercial. Thus, for these properties, designation in the MCDD zone merely continued the *status quo* and did not represent any substantive change in their zoning; both before and after the re-zoning these properties were zoned

---

provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain. . . . The similarity and equal protection inquiries are thus virtually one and the same in such a 'class of one' case, and the standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are 'prima facie identical.'" *Neilson*, 409 F.3d at 105 (citation omitted).

[3] Thus, this case is quite different from *Cine SK8*, where board members had made comments that could be construed as indicating that they had acted on the basis of race. *See* 507 F.3d at 781-82, 787.

commercial. Indeed, the commercial projects developed for the Armory Walk and Shipyard Lane properties – to which Ms. Dutko takes exception – were approved under their prior zoning designations. Second, unlike Ms. Dutko, the owners of 35 Prospect, which was previously zoned residential, did not ask to be included in the MCDD zone. That change occurred in connection with the PCD process, and (it is undisputed) no residents voiced any opposition to including 35 Prospect in the MCDD zone. By contrast, Ms. Dutko's request to have her property included in the MCDD zone met with loud opposition from all of her neighbors, most of whom signed a petition protesting her request. *See* Mot. for Summ. J. [doc. # 37], Ex. 10 ("Petition").[4] In particular, the owners of the properties on either side of Ms. Dutko's property opposed any change to the residential zoning of their properties or hers.[5]

In the face of these undisputed and legitimate reasons for the Board's actions, all Ms. Dutko puts forward is the fact that she is a female while the other three properties she uses as comparators are owned by men. That fact alone is simply not sufficient to permit a reasonable jury to find that the Board engaged in gender discrimination. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994); *Whitright v. Hartford Pub. Schs.*,

---

[4] Though not preclusive, it nonetheless bears noting that in deciding the two administrative appeals filed by Ms. Dutko, the Connecticut Superior Court held that the Board did not act "illegally, arbitrarily or in abuse of its discretion," finding that the record showed that the Board "acted with the intention of promoting Milford's best interests" and considered the historic nature of the High Street area and the opposition to the change in refusing to grant Ms. Dutko's request to be included in the MCDD zone. *See Dutko v. City of Milford Zoning Board*, No. AAN-CV-04-0085607-S (Conn. Super. Ct. Jan. 17, 2007) at 9.

[5] One neighbor initially supported the proposal, *see* Mot. for Summ. J. [doc. # 37], Ex. 5 ("November 18, 2003 Public Hearing Minutes") at 25-27, but later retracted her support and was among those to sign the petition, *see* Petition. The other neighbor consistently opposed any efforts to re-zone High Street MCDD. *See, e.g.*, March 20, 2003 Public Hearing Minutes at 35-37; November 18, 2003 Public Hearing Minutes at 10-11; Petition.

– F. Supp. 2d – , 2008 WL 1757740, at *4 (D. Conn. 2008). Because no reasonable jury could find on the basis of the undisputed facts that the Board's actions were based on Ms. Dutko's gender, the Board is entitled to summary judgment on her gender-based discrimination claim. *See Cine SK8*, 507 F.3d at 786 ("[A plaintiff] should be permitted to take his case to trial if he proffers evidence that strongly indicates that discrimination was a significant reason for a public body's actions and the defendant body, or its members, fails to counter that evidence with its own clear evidence that a majority acted with permissible motives.").

### III.

For the reasons detailed above, the Court GRANTS the Board and Mark Lofthouse's Motion for Summary Judgment [doc. # 37] in its entirety. **The Clerk is directed to enter final judgment for Defendants and close this file.**

IT IS SO ORDERED.

/s/    Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 1, 2008.**